## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREGORY MARSHALL** | * | |
| *Plaintiff* | * | |
| | * | |
| v. | * | Civil Action No. RWT-11-3189 |
| | * | |
| **DR. AVA JOUBERT,** *et al.* | * | |
| | * | |
| *Defendants* | * | |
| | * | |

### MEMORANDUM OPINION

Plaintiff Gregory Marshall, presently confined at the Western Correctional Institution in Cumberland, Maryland ("WCI"), filed a civil rights complaint seeking preliminary and permanent injunctive relief mandating treatment for prostate cancer. On November 30, 2011, the Court dismissed elements of the Complaint but required a response from the sole remaining defendant, the named health care provider, regarding Marshall's claim of denial of health care for a potentially serious medical need. *See* Order, ECF No. 3. The response (ECF No. 7) has been received and shall be treated as a motion for summary judgment.[1] Marshall has been provided an opportunity to respond (ECF No. 8) and has done so.[2] ECF Nos. 9 & 13. A hearing is not needed to resolve the case. *See* Local Rule 105.6 (D. Md. 2011). For reasons set forth

---

[1] The dispositive pleadings will be treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

[2] For reasons apparent herein, Marshall's request for jury trial, contained in ECF No. 9, is denied. His request for appointment of counsel, also contained in ECF No. 9 and ECF No. 14, is denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Marshall is a frequent litigator in this Court and well able to present his claims.

herein, Marshall is not entitled to injunctive relief and his claim shall be denied and the case dismissed.

### **Background**

Marshall alleges that his "P.S.A. prostate levels are showing high marks of #11, and it may be a deadly sign of cancer."[3] *See* Compl. Ex. A, Medical Testing, ECF No. 1-1.  He requests injunctive relief in the form of a transfer to Bon Secours Hospital to be examined by a neurosurgeon for prostate cancer.  *See* Compl. at 3.  In his latest response to the Court, Marshall claims to have bleeding from the penis and pain upon urination.  *See* Pls. Correspondence, ECF No. 11.

Marshall alleges that his appointment at Bon Secours Hospital on November 1, 2011, was cancelled due to his depression.  *See* Compl. at 1.  The record shows otherwise.  Marshall was transported to the urology clinic at Bon Secours Hospital on November 1, 2011, for evaluation due to a persistently elevated PSA level.[4]  *See* Def. Resp., Ex. B, Medical Record, ECF No. 7-3.  Once inside the urology clinic, Marshall fell to the floor in an apparent "seizure" and spit blood.  *Id*., Ex. C, Medical Record, November 1, 2011, ECF No-7-3.  Marshall was noted to have blood coming from his mouth.  *Id*.  He was admitted to the Emergency Department at Bon Secours where he reported that he had swallowed two razor blades that morning, but refused to answer

---

[3] Testing can determine the level of Prostate Specific Antigen ("PSA") in the blood.  PSA, a substance made by the prostate gland, can be higher in men who have prostate cancer, but can also be elevated due to other conditions that affect the prostate, including certain medications, enlargement of the prostate, or a prostate infection.  *See* http://www.cdc.gov/cancer/prostate/basic_info/screening.htm.  Prostate cancer is more prevalent in African-American men and for those with a family history of prostate cancer.  *See* http://www.cdc.gov/cancer/prostate/basic_info/risk_factors.htm  The parties do not dispute that Marshall, a forty-eight year old African-American, lost his father to prostate cancer at the same age.

[4] Evaluation was to include a needle biopsy and transrectal ultrasound.  ECF No. 7, Exhibit C.

any other questions.  *Id*. Ex. D, Emergency Physician Record, ECF No. 7-3.  Marshall refused to consent to an endoscopy to be performed in order to find the swallowed razor blades. *Id.,* Ex. E, Informed Refusal of Examination Treatment or Transfer, ECF No. 7-3.  Thereafter, Marshall was discharged back to WCI for continued care.  *Id*., Ex. F, Skilled Care Record, ECF No. 7-3.

On November 8, 2011, prison personnel deemed Marshall to be a security risk to himself and others when scheduled to attend outside medical visits because he repeatedly swallowed razor blades and has episodes of hematemesis (spitting blood out of his mouth).  *Id.,* Ex. G, Addendum to Encounter, ECF No. 7-3.  Therefore, it was determined that he would not be sent on medical visits outside WCI absent emergency.  *Id*.  Marshall was informed of this decision on November 17, 2011.  *Id*., Ex. H, Provider Visit Scheduled, ECF No. 7-3.  Although he now complains that Defendant Joubert is refusing to schedule an appointment for further PSA testing at Bon Secours, Compl. Ex. A, Medical Testing, ECF No. 1-1, the decision was dictated by security, not medical, considerations.

Marshall still receives care and treatment at WCI for urinary discomfort, but has been non-compliant.  For example, when asked to submit urine samples in order to determine whether he has a urinary tract infection or other condition requiring treatment, he has refused to provide urine and has stated  "You can shove this urine cup up your ass").[5]  *Id*., Ex. I, No-Show, ECF No. 7-3; *See also id.*, Ex. J, Nurse Visit-scheduled, ECF No. 7-3.  On December 21, 2011, WCI

---

[5] As noted above, while men with prostate cancer may have elevated levels of PSA, many noncancerous conditions can also increase a man's PSA level, including enlargement or inflammation of the prostate.  *See* http://www.bing.com/health/article/mayo-MAMY00180/PSA-test?q=psa+screening&qpvt=PSA+screening.

staff prescribed Bactrim DS for the treatment of Plaintiff s dysuria.[6]  *Id.,* Ex. K, Provider Visit-Scheduled, ECF No. 7-3.  Marshall continues to complain to the Court that he has blood in his urine and pain during urination.  See Pls. Correspondence, ECF No. 11.  At least one follow-up appointment with the Bon Secours urologist has been cancelled subsequent to the determination that Marshall is a security risk.  *Id*.

## Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof ... will not suffice to prevent summary judgment."  *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby,* 477 U.S. at 249–50. (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

---

[6] Dysuria is painful or difficult urination most commonly due to bacterial infection of the urinary tract causing inflammation of the bladder or kidney.  *See* http://www.medterms.com/script/main/art.asp?articlekey=3163.

**Analysis**

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When contractual prison health care providers show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104. The named individual "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U. S. at 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier,* 896 F.2d at 848; *see also Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (quoting *Farmer*, 511 U.S. at 835). An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

A preliminary injunction is an extraordinary and drastic remedy, s*ee Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), requiring a movant to demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that

the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

It is uncontroverted that Defendant sought to provide outside consultation and testing to determine whether Marshall does in fact have prostate cancer. It is equally uncontroverted that Marshall's actions at the hospital led to a finding that he is a security risk who cannot be transported for outside testing at this time. In balancing these findings, a third factor mitigates against granting the relief Marshall requests: to wit, Marshall refuses to comply with treatment currently available to diagnose and cure any underlying infection that may be the cause of his symptoms. Given these factors, the Court grants Defendant's motion for summary judgment. A separate order follows.

Date: <u>March 20, 2012</u>                                      <u>          /s/          </u>
                                                               ROGER W. TITUS
                                                         UNITED STATES DISTRICT JUDGE